Ethan Jacobs (SBN 291838)
Ethan Jacobs Law Corporation
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 275-0845
ethan@ejacobslaw.com

Attorneys for Plaintiff
Cresa Global, Inc.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cresa Global, Inc.,<br><br>　　　　Plaintiff,<br>　　v.<br><br>Twitter, Inc. and X Corp., Inc.,<br><br>　　　　Defendants. | Case No.: 3:23-cv-4642<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cresa Global, Inc. ("Cresa") asserts the following claims against Defendants Twitter, Inc. and X Corp., Inc. ("Twitter" or "Defendants").

## NATURE OF ACTION

1. This is an action for breach of contract arising out of Twitter's failure to pay Cresa's invoices after Elon Musk purchased Twitter in a leveraged buyout in late October 2022.

## JURISDICTION AND VENUE

1. Plaintiff Cresa Global, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Chicago, Illinois.

2. Defendant Twitter, Inc. is or was a corporation incorporated under the laws of Delaware, with its principal place of business in San Francisco, California.

3. Defendant X Corp., Inc. is a corporation incorporated under the laws of Nevada, with its principal place of business in San Francisco, California. Upon information and belief, X Corp.,

1

COMPLAINT

Inc. is the successor in interest to Twitter, Inc. and Twitter was merged into X Corp. earlier this year.

4.     The amount in controversy exceeds $75,000 exclusive of fees and costs. Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332.

5.     Twitter is subject to personal jurisdiction in this Judicial District because its principal place of business is within this District and State and because it consented to personal jurisdiction in this District in "[a]ny legal action or proceeding arising under" the September 30, 2014 Master Services Agreement (as amended by the September 18, 2020 Amendment) that gives rise to this lawsuit (the "MSA").

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the acts, events, and omissions giving rise to Plaintiff's claims occurred in this judicial district and because Plaintiff and Defendants consented to venue in this District in "[a]ny legal action or proceeding arising under" the MSA.

## DIVISIONAL ASSIGNMENT

7.     A substantial part of the events and omissions that gave rise to the claims in the Complaint—the breach of contract, failure to pay on an account stated, and failure to pay on an open book account—occurred in San Francisco county, and accordingly assignment to the San Francisco Division is warranted.

## THE PARTIES

8.     Plaintiff Cresa Global, Inc. ("Cresa") is a global commercial real estate advisory firm that exclusively represents commercial tenants and occupiers.

9.     Twitter, Inc. ("Twitter") is a social media company based in San Francisco, California.

10.    On information and belief, Defendant X Corp., Inc. is Twitter's successor in interest and now operates the Twitter social media app and website, now renamed "X."

## COMMON FACTUAL ALLEGATIONS

**A.  2014-2022: The Cresa-Twitter Relationship**

11.    In 2014, Twitter hired Cresa to provide it with real estate advisory services.

12.    On September 30, 2014, Cresa and Twitter entered into a Master Services Agreement

that sets out their agreement. Twitter included the word "Confidential" in the footer of the Master Services Agreement, but does not otherwise specify that it must be kept confidential, and so in an abundance of caution Cresa does not attach the agreement as an exhibit to the complaint at this time. Cresa and Twitter entered into an Amendment to the MSA on September 18, 2020. This Complaint refers to the Master Services Agreement, as amended, as the "MSA."

13. Cresa provided services for Twitter in multiple U.S. and non-U.S. locations to Twitter's satisfaction and Twitter paid its invoices. During the years when Cresa worked with Twitter, Twitter never disputed an invoice from Cresa.

### B. 2022: Elon Musk Purchases Twitter, Fires Half the Employees, Destroys its Revenue Stream, and Stops Paying Creditors.

14. In April 2022, multi-billionaire Elon Musk offered to purchase Twitter for $54.20 per share. Musk was motivated in part by his belief that Twitter's content moderation decisions were hostile to political views of the far right in the United States.

15. Soon after Twitter accepted his offer, Musk changed his mind and attempted to back out of his offer, prompting Twitter to sue him in Delaware. Faced with the impossibility of escaping his promises, Musk relented on the eve of his deposition and agreed to purchase Twitter on the terms in his agreement.

16. Musk concluded the purchase of Twitter on October 27, 2022.

17. Musk-owned Twitter immediately laid off half the company's employees and is reportedly refusing to pay their full severance. It also forced out hundreds more after they refused to sign loyalty oaths that would have required them to agree to a "hardcore" work environment. And it fired the executive team that had forced him to close on his purchase of Twitter, including most of the senior legal team.

18. At the same time, Musk became personally involved in Twitter's moderation decisions. On information and belief, Musk was directly involved in the decisions to ban accounts of users who criticized him and to reinstate other accounts, including those of former president Donald Trump, who was banned after using Twitter to incite a mob to attack the U.S. Capitol; and Andrew Anglin, a notorious neo-Nazi.

1      19.    The effect of these moderation decisions was to alienate the advertisers who accounted for the bulk of Twitter's revenues, throwing the company into instant financial crisis.

20.    On information and belief, Twitter responded with a campaign of extreme belt-tightening that amounted to requiring nearly everyone to whom it owes money to sue.

21.    On information and belief, Twitter stopped paying rent on some of its offices and stopped paying several vendors whose services it was still using.

22.    Twitter also cancelled many contracts and stopped paying people to whom it owes money.

### C. 2023: Musk-owned Twitter Ignores Cresa's Outstanding Invoices

23.    Between mid 2022 and early 2023, Cresa provided services to Twitter in several cities around the world and submitted invoices for those services to Twitter.

24.    Cresa's unpaid invoices for its work for Twitter are as follows:

| Invoice No. | Date Issued | Amount |
| --- | --- | --- |
| GPS2022-0002-08 | 8/31/22 | $7,500.00 |
| GPS22003-08 | 9/6/22 | $17,955.00 |
| GPS2022-0002-09 | 9/30/22 | $42,000.00 |
| GPS22007-09 | 10/06/22 | $15,687.50 |
| GPS22003-09 | 10/6/22 | $13,297.50 |
| GPS2022-0069 | 10/7/22 | $159,760.19 |
| GPS2022-0002-10 | 10/31/22 | $7,500.00 |
| GPS22007-10 | 11/3/22 | $19,531.25 |
| GPS22003-10 | 11/3/22 | $12,285.00 |
| GPS22007-11 | 11/17/22 | $11,562.50 |
| GPS22003-11 | 11/17/22 | $5,265.00 |
| GPS2022- | 11/17/22 | $7,500.00 |

| | | |
|---|---|---|
| 0002-11 | | |
| GPS2023-1001 | 1/16/23 | $36,804.23 |
| GPS2022-0055 | 3/8/23 | $14,973.30 |
| | **Total:** | $371,621.47 |

25. Cresa provided all the services for which it invoiced Twitter and did not receive any complaints.

26. Following the acquisition, Cresa corresponded about its outstanding invoices with its remaining contacts at the company. They gave no indication that Twitter disputed it owed the amounts on the invoices and offered no justification for not paying.

27. On February 8, 2023, Cresa sent a letter to Twitter to request payment of the first thirteen invoices identified in Paragraph 24 above—and not including the fourteenth invoice, number GPS2022-0055—totaling $356,648.17. Twitter did not respond and has not paid any of these invoices.

28. Section 4.1 of the MSA makes payment due within 45 days of Twitter's receipt of an invoice.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract)

29. Cresa hereby re-alleges the allegations set forth in the paragraphs above.

30. Cresa and Twitter entered into the MSA under which Cresa agreed to provide services to Twitter and Twitter agreed to pay for those services within 45 days of Cresa submitting them.

31. Cresa did all, or substantially all, of the significant things that the MSA required it to do or was excused from having to do those things.

32. Twitter breached the MSA by failing to pay Cresa's invoices on or before 45 days after Cresa submitted them.

33. As a direct and proximate result of Twitter's breach of contract, Cresa has suffered damages.

WHEREFORE, Cresa seeks judgment as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Cresa demands judgment on this Complaint and an award of monetary relief against Twitter as follows:

1. compensatory damages in an amount to be determined at trial;
2. costs of suit;
3. awardable pre- and post-judgment interest at the maximum legal rate; and
4. entry of an Order for any further relief as the Court may deem just and proper.

Dated:  September 11, 2023				ETHAN JACOBS LAW CORPORATION


						By:	/s/ Ethan Jacobs
							ETHAN JACOBS
							Attorneys for Plaintiff
							Cresa Global, Inc.


## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action on any issue triable of right by a jury.

Dated:  September 11, 2023				ETHAN JACOBS LAW CORPORATION


						By:	/s/ Ethan Jacobs
							ETHAN JACOBS
							Attorneys for Plaintiff
							Cresa Global, Inc.